## QUIGLEY v. ZIMMERMAN et al. (three cases).

## QUIGLEY v. HUTTO.

#### Patent Appeals Nos. 3322–3325.

#### Court of Customs and Patent Appeals.
#### Dec. 3, 1934.

Harness, Dickey, Pierce & Hann, of Detroit, Mich., for appellant Quigley.

Pope & Powers, of Buffalo, N. Y. (Joseph W. Milburn, of Washington, D. C., of counsel), for appellees Hutto and Kern.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

These are appeals, consolidated for the purpose of the hearing in this court, in interference proceedings from the decisions of the Board of Appeals of the United States Patent Office affirming the decisions of the Examiner of Interferences awarding priority of invention to appellee Marsden C. Hutto.

The party Zimmerman in interference No. 59935, appeal No. 3322, the parties Zimmerman, Kern, and Batzer in interference No. 60701, appeal No. 3323, and the parties Zimmerman and Kern in interference No. 63343, appeal No. 3324, did not appeal to this court from adverse decisions, and therefore are not parties in these proceedings.

The invention relates to a cylinder grinding tool, having a grinding head which carries radially adjustable abrading members adapted to grind the internal surface of a cylinder. A hollow driving shaft, provided with a flexible or universal joint, is connected to the grinding head and to a driving or power head. Within the grinding head are movable cams mounted upon a threaded bar, which may be rotated so that the abrading members may be adjusted. An adjusting shaft, provided with a flexible or universal joint, is attached to one end of the threaded bar, extends through the hollow drive shaft into the driving head, and is there connected to a train of gears. A rotatable manually operated collar, disposed upon the exterior surface of the driving head, is used to operate the train of gears to which the adjusting shaft is connected for the purpose of rotating the adjusting shaft and the threaded bar.

Count 1 in interference No. 59935, is illustrative, except as hereinafter noted. It reads:

"1. Mechanism for adjusting a power-driven cylinder grinding tool having a flexible drive member and expansible and contractible abrading-stone carriers, comprising means engageable with said carriers and movable relative thereto for expanding the same, means for moving said first means, a manual adjusting element located remotely from said stone carriers and said expanding and moving means and associated with said driver member, and a connection between said moving means and said element including a joint giving universal action."

The counts in issue, except count 6 in interference No. 59935, appeal No. 3322, counts 1 and 2 in interference No. 63343, appeal No. 3324, and count 2 in interference No. 63344, appeal No. 3325, call for a flexible drive shaft and a flexible adjusting shaft. Counts 1 and 2 in interference No. 63343, appeal No. 3324, and count 2 in interference No. 63344, appeal No. 3325, do not include the element of a flexible adjusting shaft, and are clearly readable on appellee's disclosure. Accordingly, appellee is entitled to make those counts, of which count 1 in interference No. 63343, supra, is illustrative. It reads:

"1. A grinding apparatus, comprising a supporting body, expansible abrading members mounted on said body, means for expanding said members, a driving member, a hollow power transmitting member forming a flexible connection between said driving member and said body, an adjusting member arranged externally of said driving member, and adjustment transmitting means operatively connecting said adjusting member and said expanding means and having a part extending through said hollow power transmitting member."

Count 6 in interference No. 59935, appeal No. 3322, will be hereinafter discussed.

As originally filed, appellee's application disclosed a "semi-flexible" joint connecting

the drive shaft to the grinding head. It did not disclose a flexible adjusting shaft.

Appellee's application, serial No. 92118, was filed March 4, 1926.

Appellant's application, serial No. 230799, was filed November 3, 1927.

On December 9, 1929, appellee amended his application by submitting a new set of drawings disclosing for the first time a flexible joint in the adjusting shaft between the drive or power head and the grinding head, and also a gear in the driving head "loosely engaged" by the upper end of the adjusting shaft. At the same time he amended his specification by inserting a description of such flexible joint, and stated that the gear and the upper end of the adjusting shaft were "loosely engaged." In explanation, it was stated that the amendment was necessary " * * * to produce an operative structure inasmuch as the absence of such a joint would prevent the universal joint between the lower end of the shaft 10 and the body 1 to function properly.

"For a like reason the upper end of the adjusting shaft section 32 is fitted loosely in the gear 29 to permit the universal joint between the upper end of the driving shaft 10 and the driving head 12 to function most efficiently."

Thereafter, by a series of amendments, claims, constituting the counts of the involved interferences, were added to appellee's application.

Interferences Nos. 59935 and 60701 were originally declared on May 22, 1930. It appearing from the preliminary statement of appellant that his alleged date of conception was subsequent to the filing date of appellee's application, appellant was ordered to show cause why judgment on the record should not be rendered against him. Thereupon appellant moved to dissolve the interferences on the ground that, as appellee did not disclose in his original application the flexible joint in the adjusting shaft of his device, he was not entitled to make the claims constituting the counts in issue. Other motions were filed by appellant, with which we are not here concerned.

The motion was denied by the Examiner of Interferences.

Thereafter, on March 15, 1932, interferences Nos. 59935 and 60701 were redeclared and additional counts added thereto, and, on or about that date, interferences Nos. 63343 and 63344 were declared.

It appearing from the preliminary statements of appellant in each of the involved interferences that he conceived the invention subsequent to the filing date of appellee's application, he was ordered by the Examiner of Interferences to show cause why judgment on the record should not be rendered against him. Thereupon appellant moved to dissolve each of the interferences on the ground that appellee was not entitled to make the claims constituting the counts in issue. The reasons assigned by appellant were, so far as the issues here involved are concerned, that, as originally filed, appellee's application did not disclose an adjusting shaft having a flexible or universal joint, that it did not disclose the invention defined by the involved counts, and that the amendment of December 9, 1929, involved "new matter."

The motion was denied by the Examiner of Interferences, and priority of invention was awarded to appellee.

On appeal, the Board of Appeals affirmed the decision of the Examiner of Interferences.

In view of the importance of the issues here involved, we deem it advisable to quote in extenso from the decision of the Board of Appeals:

"When the Hutto application was filed, original Fig. 2 of the drawing disclosed a suitable connection between the driving means and the support for the abrading members in the member 10 having a loose connection with the driving head and a similar loose connection with the support for the abrading members. The draftsman, however, in illustrating the mechanism for adjusting the abrading elements radially, presented a rigid shaft structure which obviously would prevent any lateral play of the driving connection. This construction, as illustrated in Fig. 2, is comprised of a shaft section 5 upon which the adjusting cones for the abrading elements are mounted having a squared extension 32 fitted within a hub member 30 on gear 29. This gear 29 meshes in turn with a pinion 27 which may be rotated by another gear 26 connected with suitable operating means to bring about proper adjustment of the adjusting cones and thereby of the radial position of the abrading elements 33.

"In the amendment of December 9, 1929, Hutto conceded that his showing was inoperative and a new Fig. 2 was presented in which the draftsman's error was corrected. In this figure the squared section 32 of the shaft is shown connected to the lower section of the shaft 5 by means of a cross-pin extending in-

to slotted openings in the end of the shaft section 5. At its upper end the squared shaft section 32 is fitted into an enlarged opening in the hub member 30 of the gear 29. By this very simple and more or less obvious change in the construction the driving connections between the driving head and the support for the abrading members were made flexible and allowed some lateral play at these connections.

"By examination of the Hutto specification as originally filed, it will be found that the description of the universal joint connection between the driving head and the support for the abrading members is well described and this member is stated to be a "semi-flexible driving connection" in line 6 of page 4 of that specification. It is obvious that original Fig. 2 with the rigid shaft sections 5 and 32 therein disclosed would not allow of any flexing of the driving connections. We understand this term to imply a connection which would permit lateral play between the driving head and the support for the abrading means.

"Quigley points to the fact that the device as shown in original Fig. 2 of Hutto is not inoperative if the parts are properly aligned and this is, without doubt, true but it is clearly pointed out in the original Hutto specification that it was the intention of the inventor to provide a flexible driving connection between the driving head and the member supporting the abrading elements and that would not be provided in the original Fig. 2 construction. Moreover, we can discover no function of the flexible connections between the member 10, the driving head and supporting member for the abrading elements (original Fig. 2), unless the shaft section 32 is also flexibly connected to the shaft section 5. There is some attempt on the part of Quigley to show that such universal joint connection would be of advantage irrespective of the rigidity of the center adjusting shaft sections 32 and 5. We are satisfied that it was Hutto's original intention to provide a suitable flexible joint connection between the driving head and the support for the abrading members and that the draftsman was negligent in illustrating the adjusting shaft in such a manner that it did not permit such flexible driving connection.

"We are aware of the general rule of this office that new matter should not be allowed to be entered into an application after it has been filed but this general rule is modified in the case of an original showing which will prevent the device from operating as described and where the change in showing required to illustrate an operative structure is of such a simple and obvious character that an ordinary mechanic could readily carry it out. We consider that the modification shown in the present Fig. 2 of the Hutto drawings is of such class and that Hutto would be deprived of a portion of his inventive concept if not allowed to modify his showing as in this figure.

"We have noted that the Hutto application and the claims as filed did not emphasize particularly this universal joint connection between the driving and driven parts of the grinding tool but feel that there is enough disclosure in the original Hutto specification and drawings to warrant the addition of the matter illustrated in additional Fig. 2 to support the broad claims forming the interference issues. The driving member 10 and connections in original Fig. 2 would give some idea of how shafts 5 and 32 could be connected to allow of this flexibility of driving connections."

The purpose of providing flexible or universal joints in the drive and adjusting shafts, as disclosed in appellant's application, is to eliminate the necessity of maintaining accurate alignment of the driving head with the axis of the cylinder bore during the operation of the device. Without the flexible or universal connections in the adjusting shaft, the device will operate properly, provided the driving head is maintained in direct alignment with the axis of the cylinder bore.

It is contended by counsel for appellant that appellee's application as originally filed did not disclose a flexible adjusting shaft; that he did not mention or explain the utility or desirability of such shaft; that, although he disclosed an adjusting shaft which was rigid and not flexible, his device would operate, provided the driving head was accurately aligned with the axis of the cylinder bore; that his claims prior to an amendment made March 21, 1930, in which claims to the involved invention were added to his application for the purpose of interference, were directed to entirely different features of his device; that there is nothing in his application as originally filed to indicate that he had any conception whatsoever of the involved invention; that the amendment made December 9, 1929, disclosing for the first time a flexible joint in the adjusting shaft between the driving head and the grinding head, was "new matter"; and that therefore appellee

is not entitled to the filing date of his original application, for conception and reduction to practice of the involved invention.

It is contended by counsel for appellee that, although appellee did not disclose in his original application a flexible adjusting shaft, and neither described nor made claims therein to the involved invention, the application did disclose a flexible driving connection in the driving shaft, and that—

"* * * It is evident that he must have contemplated a joint or flexible connection of some sort in the inner adjusting shaft which would permit and accommodate the universal or flexible action of his outer drive shaft. His original illustration and description necessarily implied such construction and arrangement of the inner adjusting shaft and connections as would permit the flexible or limited universal movement of the driving connection. Without such jointed construction of the inner shaft, the jointed outer shaft could not function in the manner intended and described.

"Through an obvious draftsman's error, the inner adjusting shaft (comprising shaft sections 32 and 5) was originally shown as integral and rigid, and as fitting snugly, without clearance, in the hub 30 of the head 12 (Rec. p. 50E). As thus shown, the adjusting shaft is incapable of any side movement or lateral play such as would be required to permit the jointed member 10 to operate as a flexible, semi-flexible or universal-action connector. In other words, the original illustration of the adjusting shaft as rigid with both the head 12 and body 1 prevented the functioning of the semi-flexible connection of drive member 10 with the head and body, defeated the manifest purpose of the applicant Hutto in providing the joints at the end of member 10, and rendered those flexible joints inoperative and useless.

"The amendment of December 9, 1929, merely made those changes in the adjusting shaft which were required in order to permit the hollow drive shaft and the device as a whole to function as the applicant Hutto, according to his original disclosure, manifestly intended it to function.

"The defect was apparent; its remedy was obvious to any mechanic skilled in the art. Any skilled mechanic, looking at the original drawings and specification, would understand that a semi-flexible (flexible or universal) action of the drive connections was intended (as described), and that, in order to permit the flexible or universal-action drive connection 10 to operate in the manner intended by the original disclosure, it would only be necessary to provide a flexible or universal-action joint (instead of a rigid connection) in the adjusting shaft between the shaft sections 5 and 32, and suitable clearances for those parts, to permit a slight degree of lateral play."

Counsel for the parties do not disagree as to the principles of law involved in the case.

It is conceded by counsel for appellant that if the amendment of December 9, 1929, does not involve "new matter," that is, if it does not involve any material addition to, or variance from, the original application, the decisions of the Board of Appeals should be affirmed. See Bloodhart v. Levernier, 64 F.(2d) 367, 20 C. C. P. A. (Patents) 917, and cases cited therein. So the real issue in the case is whether or not the amendment so made involves "new matter." If it does, the decisions of the Board of Appeals, so far as they relate to the counts involving that question, should be reversed. If it does not, the decisions should be affirmed.

Rule 70 of the Rules of Practice in the United States Patent Office reads as follows:

"In original applications all amendments of the drawings or specifications, and all additions thereto, must conform to at least one of them as it was at the time of the filing of the application. Matter not found in either, involving a departure from the original invention, can not be added to the application even though supported by a supplemental oath, and can be shown or claimed only in a separate application."

That amendments may be made to patent applications for the purpose of curing defects, obvious to one skilled in the art, in the drawings or written descriptions of inventions, is so well settled that we deem it unnecessary to cite authorities in support thereof. We know of no authority, however, to support the proposition that an invention, neither disclosed nor suggested in an application, may be added thereto by amendment.

Appellee did not, in his application as originally filed, disclose a flexible adjusting shaft. He did not show it in his drawings, describe it in his specification, or make any claim to it. He did not suggest anywhere in his application the desirability of a device that would allow for misalignment of the driving head and the cylinder bore. How then can it fairly be said that he was entitled to make the amendment of December 9, 1929, as argued by counsel for appellee, "in order

to make his device function in accordance with his original disclosure, and as he manifestly intended it to function"? The question is answered in the decision of the Board of Appeals and by counsel for appellee by the statement that, as appellee disclosed a flexible driving shaft, he must have had in mind the precise invention involved in these interferences, and that nothing more than mechanical skill was required to supply the necessary flexibility to the adjusting shaft.

Of course, had the desirability of eliminating the necessity of maintaining accurate alignment of the driving head and the cylinder bore during the operation of the device been explained in appellee's application, we could understand how, in view of his disclosure of a flexible drive shaft, the necessity of providing a flexible adjusting shaft and the means for giving it the necessary flexibility might readily occur to one skilled in the art.

In the case at bar, however, there was no suggestion in appellee's application, as originally filed, of the utility or desirability of making any allowance for misalignment of the driving head and the axis of the cylinder bore during the operation of his device. He disclosed nothing more, so far as the invention here involved is concerned, than a "semiflexible" joint in the drive shaft, the utility of which he did not explain. Claims to entirely different features of his device were prosecuted for a period of three years and nine months before it occurred to appellee that his application did not fully disclose or claim the involved invention. Furthermore, in our opinion, there is no basis for the argument that the invention defined by the involved counts was inherent in the structure disclosed in appellee's original application. In view of these circumstances, we are unable to agree with the Board of Appeals that it may properly be deduced, solely from the fact that appellee disclosed a flexible driving shaft, that his failure to disclose a suitable flexible joint in the adjusting shaft between the driving head and the grinding head, which, it was said, he then had in mind, was due to a draftsman's error. We think it may fairly be assumed that a draftsman did not prepare the written specification, or the claims, for appellee's invention.

Appellee may have conceived the involved invention prior to the filing of his original application, and may have intended to disclose and claim it therein. But, however that may be, we are of opinion that his application, as originally filed, did not disclose the involved invention, that it was not sufficient to support the counts, except as herein noted, involved in these interferences, and that the amendment of December 9, 1929, was unwarranted by anything contained in the application, and was therefore "new matter." See In re Joakime Kobseff, 48 F.(2d) 956, 18 C. C. P. A. (Patents) 1326; In re Bloch, 65 F.(2d) 268, 20 C. C. P. A. (Patents) 1180; In re Zuckerman, 67 F.(2d) 905, 21 C. C. P. A. (Patents) 737; In re Spinasse, 69 F.(2d) 109, 21 C. C. P. A. (Patents) 883.

Count 6, hereinbefore referred to, reads:

"6. In combination a cylinder grinding tool, abrasive carriers, a support for said carriers, means for connecting said support to a source of power for rotary movement thereof, including a hollow drive shaft having a readily detachable connection with said support, means associated directly with said stone carriers for adjustment of the same toward the cylinder wall surface, an exteriorly accessible and manually adjustable element associated with said hollow shaft and rotatable therewith and also relative thereto, and readily detachable connections between said element and carrier-adjustment means and concealed within said shaft for actuating the latter upon rotary adjustment of said element."

It will be observed that the count requires that the drive shaft shall have a "readily detachable connection with" the grinding head, and that the adjusting shaft shall have "readily detachable connections" with the rotatable manually operated collar. The count does not seem to call for connections in the drive and adjusting shafts "giving universal action," within the meaning of the counts which define the involved invention. A "readily detachable connection" does not necessarily mean a flexible or universal joint connection. However, appellee did not, in his original application, disclose a readily detachable connection between the adjusting shaft and the rotatable manually operated collar, and it was not until the amendment of December 9, 1929, that such a detachable connection was disclosed. It was then added, according to explanations accompanying the amendment, as an important, if not a necessary, element of the involved invention. Accordingly, we are of opinion that appellee's application, as originally filed, was not sufficient to support count 6, supra.

Subsequent to the filing of the record in this court, appellee filed a motion suggesting a diminution of the record by adding thereto certain documents relating to interferences

other than those now before us. The motion was granted, subject, however, to the order of the court that the costs for printing the additional matter requested by appellee should be taxed on final decision. We are of opinion that the additional matter so certified to the court was unnecessary to a proper determination of the issues in the case. Accordingly, the costs of printing the same will be taxed against the appellee.

For the reasons stated, the decisions in interference No. 63343, appeal No. 3324, and, as to count 2 in 63344, appeal No. 3325, are affirmed. The decisions in interference No. 59935, appeal No. 3322, in 60701, appeal No. 3323, and, as to count 1, in 63344, appeal No. 3325, are reversed.